Appellant Ms. Alisco and Appellate Mr. Daly Mr. Daly The question in this case is whether the prosecution can ethically charge a man with first degree murder than argue to a different jury that the man was not guilty of that same first degree murder while that charge was still hanging over his head. That's exactly what happened in this case. And Mr. Cearlock should be granted a new trial because of it. He was denied due process because, first of all, as you all know, a woman was found dead in Metro East. Both John Cearlock and a man named Matlock, Jordan Matlock, they were both charged with her murder. Matlock eventually cut a deal with the state. His murder charge, though, was never dropped, at least not at the time of the defendant's trial. At the trial, knowing that Matlock was still charged with first degree murder, the state argued to the jury that he played no part in the killing. He didn't even know that this woman was dead until several days later. Defendant was solely responsible for her death. He said things like Matlock did not kill this woman. He's not guilty of murder. Yet this murder charge is hanging over his head. It simply denied defendant due process. Now, it might be argued that, or the state, I'm sorry, in the brief argued that we had argued judicial estoppel and that we did not meet all of the requirements. First of all, in Caballero, it says that the five elements are generally required. So if we don't completely meet one or two, it's not fair. It's discretionary with the court. But call it what you will. Call it judicial estoppel. Call it equity. Call it something else. What happened here was simply not fair. The state's case hinged on Matlock's testimony because they had no other evidence against the defendant. And Matlock never went to trial. Is that correct? Not to my knowledge. He had a plea agreement with the state. We didn't have two trials like there were in Smith v. Woodard. Correct. To the best of my knowledge, I honestly don't know what's there's not been a trial for Matlock. Because he had a plea, right? He had a plea. And he accepted that plea. Yes. And the sentence was imposed. As far as I know. No appeal was taken. As far as I know, there has not been an appeal. Was the jury informed of the prospective plea before he testified or while he testified? They were. So there was no hiding motive there? No, that's true. That's true. However, the jury knew that he was still charged with murder. But the state kept arguing he didn't commit murder. Yeah, but were they advised of the lesser plea that was set up? Because he didn't plead for murder, I don't believe, did he? Was he sealing or something like that? Correct. Yes, they were informed of the plea. However, my whole argument that it's simply not fair, it may sound like a plagued argument. It's not fair. But our whole jury system, our whole justice system is based on fairness. And fairness to both sides. Not just the prosecution. The prosecution cannot simply charge willy-nilly people with crimes. In fact, it's a violation of the Illinois rules of professional conduct that you're not supposed to charge people unless you really believe that they've committed the crime. Is that something we're supposed to decide? That it was a violation of the rules of professional conduct? No. No. I'm just saying that it really can't be argued that this is simply a false argument that was created by the defendant because the prosecutor does have a duty. Well, they were roommates, right? Pardon? Wasn't Seerlock and Matlock or whatever the other guy's name, weren't they roommates? Correct. And weren't they together during some point in time that evening? Correct. So they just didn't pick him off the street and make a deal with him? No. No. And I'm not arguing that. But what I'm saying is if the state is going to bring charges against someone, they should really think that the person was guilty of that crime. They shouldn't bring you in for speeding and willy-nilly charge you with murder if they really didn't think you were guilty of murder. But they let this murder charge hang over Matlock's head while arguing to the jury he didn't commit murder. But yet they charged him with murder. And the jury, the part of the plea problem is the jury probably thought being average citizens, somebody's got to pay for this girl's death. OK? We know that Matlock is going to walk. Although the state still thinks he's guilty of murder. We don't know why Seerlock didn't go ahead and make some kind of a deal. So we're going to go ahead and convict him. Well, now, you say the state knew he was guilty of murder. They told the jury that he is going to enter a plea, as long as he tells the truth of what they said, I think, to concealment of a homicidal death or something like that to the jury. So they knew that he wasn't going to be charged with murder and contemplate a murder. That's correct. But that's what the problem is. The problem is that the state is saying to Matlock, with this charge, any time they file a charge, they're telling the person named under, people of the state of Illinois versus whoever, we think that you're guilty of this crime. Any time you use a negotiated plea with a co-defendant, it's a tradeoff. I understand that, but I've been doing this for 26 years, and I have never seen a case where they have a plea agreement with the co-defendant, yet they're standing there arguing that the co-defendant wasn't guilty of something that he still has pending. Now, maybe I've just been really lucky in my cases, but I have never seen it. And like I said, my argument comes down to basically it's not fair. Well, these facts are clearly distinguishable from the three cases, some would say Smith, Thompson, and Drake, where there were actually two trials and two convictions for the same offense. I agree with that. That didn't happen here. But he was charged with the offense, which I understand, charging someone and convicting them are two separate things. But what I'm saying is that the state's attorney, or the assistant state's attorney, said, Matlock, we think you're guilty. Jury, we don't think he's guilty. It's judicial estoppel, it's equity, it's whatever it is, it's just you shouldn't be allowed to do that. Would you have felt better if the state would have come in and said, judge, I want to nolly-cross this murder charge against this witness here, with the option of bringing it again after he testifies if he doesn't testify truthfully? That would make you feel better then? At least they wouldn't have been violating the professional rules of conduct by charging and maintaining a charge that they didn't believe was correct. Have you made a report on that? No. You're required. Well then, I'll do that when I get back to my office. I understand what you're saying. Again, all I'm saying is that, like, again, it's simply not fair that something like this should be allowed to happen. I think it did influence the jury. Like I said, Matlock's testimony was the only thing that convicted the defendant. The state, in their brief, to kind of go back to what you were saying, says it's not clear that the state would have prosecuted Matlock for murder, even if the plea deal had fallen apart. Okay, that's another thing wrong with what happened, because it's not clear that they also would not have proceeded with murder. So they would have told the jury, oh, he's not guilty of murder, and then if the deal had fallen apart, they could have convicted him of murder. Like I said, all I'm saying is that I think that it denied the defendant the due process of law. I think that he should be given a new trial where the prosecutor does not change their mind about what the most important witness has done. Are there any more questions? If you may, we have an opportunity for rebuttal. Let's go. Mr. Bailey. Thank you, Your Honors. May it please the Court and the Council, by way of introduction to see the Council table here with me today is Tim Ting, a new attorney in our office, is here to observe, and you'll be seeing a lot more of him in the future. The problem I have with the defendant's argument is it seems to be kind of a flip-flop of who might have the actual due process argument here, and that might be Matlock. If the State had gone to trial against the defendant, secured a conviction, and told the jury, as counsel said, that Matlock was going along for the ride, maybe trying to clean up after the crime, wasn't guilty of murder, then turned around and prosecuted Matlock for murder, the plea deal fell apart or whatever, that would probably dovetail a little bit more closely with the type of argument that the defendant is making here. The problem is it's not Matlock who's on appeal here, it's the defendant. So the question is whether the defendant is denied due process. Now, judicial estoppel is a matter of a due process, and it's not something that you see a lot of, in the sense of it being utilized to vacate a conviction. In fact, I could not find a single Illinois case that resulted in that particular disposition. These federal cases, which were cited by the Illinois Supreme Court in People v. Caballaro, in a different context but in a judicial estoppel discussion, are really sort of the benchmark cases in this matter. As the Court noted, the facts are distinct. Now, it is a harsh remedy, obviously. So it certainly entails something along the lines of a particularly egregious act of prosecutorial misconduct. The federal cases, I think, provide the best template for that type of misconduct. In these cases, the state or the government, among other things, made a very calculated decision to go forward with a particular set of facts to secure a conviction and then went to a co-defendant and went to trial on that, used almost the exact opposite set of facts and, in fact, almost ridiculed some of the very same evidence that they used to secure a conviction in the first place. This, of course, prompted a sense of outrage by the federal courts and resulted in those convictions being reversed. Dovetail that, I think, with Caballaro's discussion of the other use of judicial estoppel. Now, counsel notes that this isn't a rigid, hard, and fast set of criteria for application of the estoppel rule. True, the very few lists that are generated by courts are actually hard and fast. But they are useful, and I think that the deficit of an ability of a litigant to meet those elements demonstrates a fundamental deficit in the argument that they're making before the court. I focused here, in this case, principally on the defendants and the fourth and fifth elements discussed by Caballaro. One was an intent for the trier fact to accept the truth of the facts alleged. Well, there's certainly no intent by the state to come forward and prove or argue that the defendant, excuse me, that Matlock was guilty of murder. In fact, they argued the opposite. And I do want to make a point here. The exploitation of the fact of Matlock's charge was one harnessed by the defendants far more than the state did. You will note that in the defendants' reply brief, they say, well, the state brought it up during their case in chief. Well, I mean, you would be a pretty bad prosecutor if you didn't bring out during your case in chief that your principal witness has got a plea deal because they're going to get hammered in cross-examination. And that's really what happened here. The state brought it out, and the defendant then went through it in cross-examination. And then in the closing argument, I quote a passage from the closing argument in the brief where I think as a matter of tactical decision-making, quite logical to say, hey, the state thinks that Matlock's the murderer here. I mean, you know, why should you find my guy guilty if they all only think Matlock is the murderer? It's the defendants coming out here and saying, look what the state's doing, look what the state's saying. The state hasn't taken any position that Matlock was guilty and then flipped on that. Okay? What they've done is they've taken a charge, a charge that no trier of facts can know anything about, but for the fact that the defendant was exploiting it vocally and vociferously during their case in chief and during their argument for the jury. That's fine. But I think it underscores the point that the defendant can't speak with a forked tongue and say that, well, I want to use this to show that my client is innocent, but on the other hand, you know, obviously you're taking an inconsistent position here. It doesn't really work that way. The fifth element is that the state succeeded. The government succeeded in the first proceeding, received some benefit from it. This case was never prosecuted as a murder charge, and I think that that also underscores the distinction of the judicial establishment situation in Smith versus Bruce and Thompson versus Calderon where the state proceeded, obtained a conviction, and then obtained a conviction against a second co-defendant and obviously diametrically opposed philosophies. That never came to fruition in this case for one reason or another. The state made the decision. It made the argument, I believe, even to the jury, to the judge, I don't recall offhand, that even though this defendant now was indicted for first-degree murder, which I think exposes a bit of a problem to defendants of professional responsibility pieces here, but in any case, that as investigation went forward or as they made their own tactical decisions with regards to how they want to prosecute this case, they decided they weren't going to proceed on a first-degree murder prosecution against Manley. So I think that I would ask this court to really, at its core, look at the facts of this case and compare them with Smith, compare them with Thompson. Those are really only one of the few cases that are sort of floating out there that sort of are the same argument that the defendant is making here. They're not the same because there were two prosecutions and two convictions. Correct. Right. And they were even. The party was proposing, as a matter of fact, opposite positions before two different sets of trials, in fact. That simply has not happened in this case. It wasn't even going to happen in this case because the state has said from the beginning that we don't think Matlock is the murderer. Okay, you've got a charge. And maybe Matlock's got a complaint here. Maybe he thinks it's unfair that he had to wait this long to get his case resolved and it's sort of worked its way into the argument below the circuit court. And this is all fine if you're Jordan Matlock's lawyer, but this isn't Jordan Matlock's case or appeal. And I do find that telling that counsel an argument today consistently refers to as just not fair to Matlock. Not fair to Matlock. I don't take a position one way or the other on what's fair to Matlock. I don't care. It's fair to the defendant. The defendant does not have any due process right violated in this case by the state. Are there any questions? Thank you. Mr. Lesko, rebuttal. Just a few questions. First of all, if I said it wasn't fair to Matlock, I apologize because I misspoke. The state argues that we didn't meet particularly the points four and five of the judicial establishment test. The fifth one says you have to have succeeded in the first proceeding and received some benefit. Well, they certainly did receive a benefit. And as we all know, they succeeded because they got Matlock to plead to this lesser offense. He walked after this trial. He walked. And they got all this evidence that convicted Cyr Kearlock. He had about three and a half years, didn't he? What did Matlock? Didn't he get credit for time served or something like that? Correct. He walked. As soon as he made his plea, he walked. It was like three years, wasn't it? Right, because he pledged a three-year sentence and he served like three and a half. So he walked right away. But the state received a benefit because they received Matlock's testimony, which is the only thing, again, that convicted the defendant. Unless you have more questions. Thank you. Thank you, counsel. We appreciate your arguments and the briefs. And we'll take the matter under advisement to render our decision. All right. Our next case, are they signed in? Are they signed in? Yes. It's 5090579, People v. Forbes. For the appellant, we have Richard Hussack. Thank you, sir. And for the appellee, we have Robert Forbes. Just wait for a second. Judge Spomer will be right back. All right, Mr. Hussack, when you are ready, sir, you may present your argument. May it please the court, counsel, I'm Assistant Attorney General Richard Hussack, counsel for the people of the state of Illinois on the relationship of the Director of Central Management Services. And I urge the court to reverse the circuit court's dismissal of this action on the ground that the circuit court lacks subject matter jurisdiction over it. The issue in this case arises from a claim relating to workers' compensation benefit checks that were made pursuant to an award in favor of Mrs. Gibson of permanent total disability benefits for life. She died many years after the back injury when she was working for the state Department of Human Services, and several years after that award was entered. But the state mistakenly continued to send checks. They were not sent back. She obviously did not endorse them. Somebody else negotiated them over the endorsement of her signature, and this suit was then brought upon discovery of her death to recover the six months of payments made. Who signed under her name since you brought it up? Was that ever brought out at all? Because I looked at it and I couldn't tell because of the way it was signed. We don't know for sure. Discovery never proceeded because the case was dismissed at the pleading stage for lack of subject matter jurisdiction. At this point, we're trying to pursue the merits, and in the course of discovery of this court, remand the case because, as we submit, the circuit court does have jurisdiction to adjudicate the merits. Who signed them? Who got the money? The circuit court will get to the bottom of that and decide under principles of common law, unjust enrichment and restitution or conversion, who's responsible to pay how much. And the defendants in this case can assert whatever defenses to the merits they want to assert by way of an answer. At this point, however, they said that the circuit court lacks even subject matter jurisdiction to adjudicate the merits of that restitution or unjust enrichment claim on the basis that it involves an issue of an overpayment of workers' compensation benefits. And citing the Scott Wetzel Services case, it was mentioned in the defendant's motion, the circuit court said, yes, I don't have jurisdiction to decide the issue of an overpayment of workers' compensation benefits. And we submit that that holding is plainly wrong. It's directly contradicted by controlling authority from the Illinois Supreme Court and the Scott Wetzel Services case itself, as well as the Karastamatis case, which we've also cited, that's a decision by the appellate court, but by the Workers' Compensation Commission division. All of those cases said very emphatically and very clearly that although the Workers' Compensation Commission has exclusive statutory jurisdiction to determine whether a claim is entitled to workers' compensation benefits, and if so, what the amount of those benefits are, that when it has fulfilled that goal, its job has come to an end. And any action to recover an overpayment of benefits under benefits that were mistakenly made pursuant to a commission award is part of the circuit court's traditional common law jurisdiction over common law claims for unjust enrichment, restitution, and the like. The court in the Illinois graphics case out of the Supreme Court made clear that there is no provision in the Workers' Compensation Act that gives the Industrial Commission, formerly the Industrial Commission, now the Workers' Compensation Commission, any authority to adjudicate whether there has been an overpayment or the amount of such overpayment or who should pay it back. Section 19G of the statute, the court made clear in Illinois graphics, gives the circuit court the authority to adjudicate issues relating to the collection of benefits. Well, how would you know if it was an overpayment if you can't tell them it's an overpayment? Who has to adjudicate overpayment? The circuit court does. So in other words, the circuit, how would they know if the payment was adjudicated by the account court? I'm sorry, I didn't hear the end of the question. How could they know who adjudicates the payment, the initial payment? The circuit court adjudicates that matter like any other factual question. No, no, let's back up. Who adjudicates the payment to begin with? You mean the amount of the benefits? Yes. Oh, I'm sorry, I misunderstood. The Industrial Commission must adjudicate what benefits are owed. That's a monthly payment. Oh, yes, or is it a total? The award says approximately, I think, $360 per week, and the Department of Central Management Services, and I'm not exactly sure why they do this, they send out monthly payments that are equal to the corresponding number of weeks pursuant to the award. So in this case, the commission fulfilled its responsibility. It entered an award for the claimant's life for a certain amount of benefits. The right to receive those benefits pursuant to the award continues to exist. Those benefits continue to accrue every month that she was allowed, and the award was unambiguous. So that's for natural life, not after life. No, no, but not a specific forecast of life. No, it's not some, like, insurance actuarial estimate. We actually assume you're going to live 30 more years, so you get 30 years. Right. This is strictly pursuant to Section 8 of the statute. So it didn't, like, say 107 months. No, no, and one of the cases cited by the defendants in their brief, in fact, makes an inapposite reference to a situation in which that was the nature of the award. It was a specified period of time. The beneficiary of that award died before those payments were made, and then the remaining payments pursuant to the award went to the statutory heirs. But in this case, the award is unambiguous. It says so much money per week for life. Let me ask you this. I agree that I believe Illinois graphics says that the courts, not the commission, have jurisdiction over claims for restitution of overpayment. But I'm confused about your statement on page 9 of your brief where you say, people agree that an action to recover an alleged overpayment is not yet right to be filed until the amount of those benefits has been determined. You're talking about the initial amount of the benefits. The amount of benefits. Not the overpayment. Yes, correct. Yes, and that's the Scott Wetzel case, and I think that's why the circuit court might have been confused and misunderstood the law. Scott Wetzel, which, interestingly enough, was decided by a justice who then sat on the appellate division for the Workers' Compensation Commission and I believe may still do so. Justice Hoff said, absolutely, Illinois graphics holds that these are matters within the circuit court's jurisdiction, not the industrial commission's jurisdiction, to adjudicate, you know, right to restitution for an overpayment of workers' compensation benefits. But what was interesting about the Scott Wetzel case was the suit was brought before the workers' compensation award became final through administrative review, and the court said, until the dust has settled on this award, we can't be deciding whether there's been an overpayment or not. We don't know whether maybe any benefits were owed, or if so, how much. But once that's done, let's be clear that the action to recover an overpayment, if there is one, belongs in the circuit court, not in front of the industrial commission. Is there any Illinois case or otherwise that says when there has been payment pursuant to an order of the workers' compensation for life, someone dies, and then continued payments are made in error? Is there anything? Is there a case exactly on point where somebody continued to cash somebody else's checks after they died? I don't think so, and I think the lack of such cases probably suggests that this is really unusual. I mean, you have somebody, a situation where the award is, in fact, that the award is for life. The simplest explanation is often the best explanation. The checks keep coming, and the beneficiary doesn't endorse them. Somebody else endorses them. And we don't know who signed that yet or where the money went, but what we can tell you is it wasn't pursuant to this award because there was no right to receive those checks pursuant to this award. Can we back up a little? In fact, were they notified that the person passed away? Someone notified in the state? Well, the argument has been made that the state employee's retirement system was told. Was told. And that would be an issue going not to jurisdiction but to the merits because one of the elements for a restitution claim is that they not be voluntary payments made in response to a claim of right to that money. And the assertion was made in the defendant's papers and briefing, including in this court, both that the assistant attorney general representing the state in the workers' compensation commission case was notified before any of those payments were made. And we categorically dispute that. That's not in the record. We think that that is a misrepresentation of fact. But that's something for the circuit court to resolve. But there was funds. Were there funds that were owed from the retirement? My submission is that, again, that's an issue for the circuit court to sort out as a factual matter on the merits. Just answer the question. Were there funds owed from retirement that was paid in funds? There were. And those were paid according to the probate records of which the court can take judicial notice. And I've attached those to my reply brief because the suggestion was made. I mean, the suggestion was made that they weren't paid. The suggestion was made that the temporary total disability benefits weren't paid. The award out of space shows that they weren't paid. The probate records show that the retirement benefits were paid. After having first staked out the position that any issue about an overpayment of workers' compensation benefits belongs before the workers' compensation commission, which is categorically contradicted by clear case law, the defense has now come up with a flurry of all sorts of arguments as to why they should be able to keep this money. Counsel, at some point in time, you or your office was aware that the recipient had passed away and that checks were sent out subsequent to her death and that were tendered or cashed. Is that a fair statement? Yes. Has you or your office turned this over to the Madison County State Attorney's Office for investigation for forgery? And if not, why not? I didn't handle this case in the circuit court. I am privy to documents that are in the file that reflect an exchange of communications between our trial court counsel and the defendant's counsel. And I don't think it would be right for me to be telling this court what's in that communication. I personally don't know whether this was turned over to the Madison County State's Attorney for forgery. I have had discussions with other lawyers in our office about the elements of forgery, and I know that there has been some issue about it. There's also been a reporting issue relating to… I mean, don't you – wouldn't you have a duty as Assistant Attorney General or just as a citizen that if you thought the crime of forgery was committed to report it? I know that the appellate court hates this answer. I didn't handle this case in the circuit court, so to the extent that that type of criminal reference was made or request for an investigation was made, I don't know. I wish I could – and I could certainly ask the attorney who handled the matter in the circuit court. You don't think that your office – your office – you're representing the Attorney General's office here, correct? Yes, I am, Your Honor. I'm representing CMS, the people in the relation of CMS, as the party who took over the Department of Human Services. As a general proposition, if an Assistant Attorney General's office or the Assistant Attorney General believes that there's been a forgery, would you agree that they would have an obligation to report that to the appropriate authorities? I think generally there's a duty to advise the relevant authorities of something that comes across like clear evidence of a crime. Again, I – Well, you just told me that you were aware and your office was aware that checks were signed by a person that was already dead. Right, with her signature. No notation that somebody else signed. With her signature there. Yes. And that wouldn't at least make you curious enough to think that there was a possible forgery here that it should be further investigated? If I were aware of it at the time, I guarantee I would have followed all the steps. Well, you're aware of it now, right? I'm aware of it now, and I have to tell the court I have looked a little bit at the elements of forgery, and the court finds – It doesn't seem like that somebody ought to be investigating it, should it not? Well, I concur with the court's view that it's incumbent upon somebody who's aware of that type of thing to warrant an investigation that that should be reported. Unless there's a good explanation. Well, in this case – What happened or whatever. And I don't know that the explanations given were good, but again, that would involve reference to materials outside the record that I don't feel comfortable going into. I have nothing to hide in that regard. It's sort of unfair on a canned record on appeal to start talking about things that are outside the record. I do want to say what the State did immediately was two things. Once it became aware – and I say the attorney representing CMS or the Department of Human Services in the Workers' Compensation Commission case. They did two things immediately. They stopped the payments, and then they initiated the process of trying to recover the ones that were paid after Ms. Gibson's death that were endorsed over somebody else's. But they don't feel a responsibility to report an investigation whether or not there's any criminal activity there? I don't – again, I don't know whether they felt that responsibility, whether they had communications with the local state's attorney, and if so, where those communications went. And again, if the court believes so – I mean, I'm certainly glad to have the conversation and report back to them. The court sensed that it was incumbent upon the Attorney General's Office to do so and to find out whether they in fact did so. Am I correct that payments were made for six months after her death? Six payments. Correct. And is it correct that you were not notified – the state was not notified within that six months that they were notified after the payments had been made? That's what the complaint alleges. Those facts must be taken as true. Okay. There's these, I think, spurious suggestions that the submission of a claim for death benefits from the state employee's retirement system was tantamount to notifying CMS or the Department of Human Services or the attorney representing them in the Workers' Compensation Commission case that she had died. Again, that all goes to the merits of the case, not the jurisdictional issues. So from our view, the case law is very clear on this. The circuit court just got it wrong when thinking that if somebody whispered workers' compensation benefits and that had some relationship to an overpayment claim, that that was within the exclusive jurisdiction of the commission. It's sort of like sometimes you get a court that hears that there's been a bankruptcy filing, and immediately they think automatic stay, and they stop doing anything, even though sometimes the stay doesn't apply. I think the court sort of in a knee-jerk reaction backed off and said, well, I can't touch this because it involves some connection to a workers' compensation case. But the cases are emphatically clear that the circuit court was wrong in that respect. A circuit court, even to enforce a benefit award under Section 19G of the Act, has to consult the award. It has to see what payments must have been made, and then it has to compare that with the payments that were made. This is the mirror side of that issue. Again, it's the circuit court's job to look at the award, if any interpretation is necessary, to engage in that interpretation, although in this case I think the award is manifestly unambiguous and clear, and then to compare that with the payments that were made to determine whether there was an underpayment or an overpayment. Because Section 8H doesn't apply. That's a claim for payments that were due but were not paid to the employer. Yes, that has to do with an approval issue, and we responded to the letter that was submitted attached to the defendant's motion to dismiss. We don't dispute the authenticity of the letter. We absolutely dispute the legal conclusions in there, and, of course, on a motion to dismiss for lack of subject matter jurisdiction, there was no occasion or need to dispute the additional factual assertions, which we vehemently dispute, to the extent that they were treated as admissions by not denying them. Many of them are contradictory. I mean, the arguments are made that these checks were endorsed pursuant to the authority of the administrator of Ms. Gibson's estate, but that the administrator and the estate had nothing to do with the checks because they were properly payable to the children instead. I don't know, you know, which of those arguments we're supposed to take at face value because they're inconsistent, but really the point we're trying to make is they are beside them. To the extent they have any, you know, credence at all or any factual validity, that's something for the circuit court to get to the bottom, to sort out as a factual matter like it sorts out the facts in any case over which it exercises jurisdiction. And in this case, it simply does. Was there a lump sum payment to begin with, like a starting lump for back payments that had not been made until the case was settled as to so much per month? I don't know whether it was made as a lump sum. I do know that the award indicates that temporary total disability payments, TTD had accrued for, and the award specifies the number, the period of time for which they had accrued. And it had been paid. And it specifies, you know, how many weeks at what rate, and then it specifies an amount that was paid. And those two correspond, you know, perfectly. So the inference I draw is that whether it was a lump sum or it was multiple payments plus a lump sum, all of that was paid. And to the extent that there's a claim that more was owed under the award than was paid, then certainly that's something the circuit court can resolve. To the extent, alternatively, there's a claim that something was owed not under the award but separately under the act, payable to the estate or payable to the children, that's a claim that was never filed. We don't think that that claim would have any legal or factual merit. But the defendants can't put us into the catch-22 of saying your claim doesn't ask the court to resolve any entitlement to workers' compensation benefits. But outside the award, we may have a claim that may have merit, that we may file someday, that would invoke a ground for additional recovery under the act. And if we never file it, too bad. We're holding, you know, we're holding the permission card that we'll never put down to let you go forward with your case. That's a catch-22 that just doesn't make sense. Thank you, counsel. You'll have an opportunity for rebuttal. Thank you. Mr. Forbes. Good morning, gentlemen. Counsel. I'm very troubled by the representations that were made in the argument, totally unsupported by the record and totally inconsistent with the facts of the record. So just by way of background, I'd like to explain how this developed. There was a workers' compensation claim made by my client who worked for the Department of Mental Health, State of Illinois. There was a permanent and total disability award that was entered. By agreement, the award also included a component of pension benefits, and there was TTD back pay that was still owed, and other elements of the award that were in the order. A year and a half after the order was entered, Ms. Gibson passed away. She had two children. The State of Illinois was notified of her death two separate times. The Department of Retirement Department was notified. The Attorney General was notified. It's in the record. So to sit here and say that they were not notified is inaccurate and unsupported by the record. What was the date of that notice? Was the notification prior to the state's payments? Yes, and it's not alleged in the record otherwise. Look, I would ask the court to look at the complaint. The complaint does not allege that there was a mistake of payment. The word mistake is never used in the complaint. The first time the word mistake was used was in the appellate's brief. The complaint alleges the state was notified and continued to make payments, and then it alleges there was a duty to notify the Office of Central Management Services. That's in here today. A person who was not a party to the case comes in afterwards and says they should have been notified, even though they were on the checks and they weren't a party to the case. And then they represent the word forging documents. The administrator of the state had the authority to endorse the checks and pay her two children for six months after she died. Where did that authority come from? It comes from the Probate Act. Where in the Probate Act? I don't know specifically. The administrator has the legal authority to enter into contracts on behalf of the stance of the shoes of the deceased. The IRS manual that I've cited specifically says that they don't take into account the death of the taxpayer because the administrator has the authority to endorse refund checks on behalf of the deceased. So these checks were endorsed by the administrator and paid to the children. The signature on that? Well, it's the deceased's signature just to expedite the processing of the checks. No, no, no. Whose signature was on there? The payee on the check after notifying the state of the death of the deceased. The state continued to issue checks in the name of Nancy Gibbs. I saw her name. Right. Very clear, but underneath there was somebody else's name I couldn't think of. Whose signature is that? Well, that was my name because I was also on the check, in addition to the administrator, just to endorse the check and pay the children. Okay, is that your signature underneath Gibson's? I believe it is. And I didn't see anybody else's signature on there. Was the administrator's signature on there? Well, they're not separate from Ms. Gibson, but there wasn't any forgery. Then I just thought you said that the administrator has the authority that's found in the Probate Act to endorse checks. And that's what happened here. She endorsed the decedent's name on the check. She endorsed the check on behalf of the decedent. There was no effort to try to misrepresent. Oh, okay. She put Nancy Gibson's name down there. Yes, exactly. Not her own. Not as the administrator or anything. Oh, and the state had already notified the complaint, admitted they were notified, they were aware of it. And after this was all said and done, the central management service, this was not a part of the case, filed a lawsuit, not based on the state, saying we had a duty to notify them. And your signature is on there for what reason, counsel? I believe, was I paying on the check? Pay the order of Nancy Gibson? CARA or something. CARA. Right. CARA of your address, I mean. Right. So I didn't have to endorse it, but I did anyway just to make sure there wasn't any problems in giving money to the kids. You know, it wasn't, when somebody would pay CARA just to make sure that there's not any problem with it, that's the way I handled it. Should the administrator have indicated that she's signing it on behalf of somebody, on behalf of a dead person? In what respect is it misrepresentative to do it the other way? It's representing that this person signed it. Right, which she had the authority to sign for. No, it's representing that Nancy Gibson signed it when she's deceased. I don't believe that it is appropriate to do that. And if it is, the state can't complain because they were paying Nancy Gibson. A bank can't come in and, I mean. It's, the purpose of the endorsement was not to in any way disguise something that we specifically notified the attorney in the case of the pension department of, we're simply trying to get the money to the people that were to be paid and not to cause any delay. I'm not questioning the intent. I'm questioning the validity, the legality of an administrator signing a deceased name without any indication other than the deceased signed it. You know, again, I think that's, I don't think that there's anything inappropriate with that. It was a person who was authorized to act on behalf of the administrator. It wasn't a misrepresentation to anyone. If the bank shouldn't have endorsed it, perhaps the bank shouldn't have negotiated it. Perhaps it should. How are they supposed to know? How are they supposed to know? How is the bank supposed to know? Would it make a difference if it was signed on behalf of the administrator rather than Nancy Gibson? What difference would it make? Well, they probably want to make sure that the administrator was properly appointed, had the proper bond, all other kind of matters there, you know. Anyway, we're going way off on the main issue here. Let me ask you a question. At the time of these six checks, was the deceased owed any back TTD? Yes. TTD is correct. It's my position she was owed TTD. It's my position she was owed pension benefits. And it's my position that all those issues have to be resolved by the circuit court. And it's my position the circuit court does not have jurisdiction to decide those issues. That's the basic problem of the case, other than the party who is here today was not a party to this action. The question is not whether or not the industrial commission has jurisdiction to consider repayment of benefits. The question is whether or not the circuit court has jurisdiction to consider that. Counsel assumes that when I argue that the circuit court lacks jurisdiction, that I am arguing that the industrial commission necessarily does. That's not the case. Illinois law, which is actually more generous than a lot of other states, does not provide for any reimbursement of overpayment of benefits under the work compact. And a lot of states are similar. It's not provided by the legislature. This is a statutory format. If the remedy doesn't exist in the act, it doesn't exist. It doesn't matter whether the state claims, the Department of State claims it should have been reimbursed or not. It has to be provided for by the act. It's not provided for by the act. In 1994, the Illinois Supreme Court carved out a limited exception to this lack of reimbursement. The exception the Illinois Supreme Court carved out does not exist in many other states. The exception was under limited circumstances. The circuit court has jurisdiction to consider a claim for repayment under very limited circumstances. The limited circumstances are not present here. Those circumstances are when there has been an award of benefits, TTV typically, which is later and the respondent makes payment pursuant to that award. And the award is later set aside by the industrial commission. Therefore, there is no industrial commission award for the circuit court to interpret. There is no award. Under those very limited circumstances, the circuit court has subject matter jurisdiction. That's not what happened here. We have a final award. We have a disagreement over the amount of benefits that were paid or were owed. The statement by counsel that the award on its face does not show that it was paid is not true. The award does not show that it was paid. It shows what is owed. The only way to determine what was paid is to have a factual determination by the circuit court of what benefits were owed and were paid. So in this year and a half after she got her permanent award, was there an action filed in the commission claiming additional benefits? We went a year and a half. What if we had gone four years? There was no action filed. It would be a counterclaim if the court finds there's jurisdiction in this case. You know, there's two children here. There's a question of who's representing whom at this point. There's all sorts of issues that aren't really relevant to this that play into this. The lady has passed away. This lawsuit is what is currently being addressed. Does the court have subject matter jurisdiction? Not does the industrial commission have jurisdiction. What the counsel fails to recognize is that there is clearly a scenario. The predominant scenario is you cannot seek reimbursement of overpayment of benefits. The compact does provide for it, and counsel refuses to accept that and assumes that if you can't go to the industrial commission, that you necessarily can go to the circuit court. If what counsel says is true, that I can go to the circuit court, any employee who's been receiving benefits can go to the circuit court and claim that the respondent, the employer, didn't pay them the benefits that he was owed under the act and ask the court to litigate that. There'd be all kinds of cases in the circuit court litigating, do I owe them benefits? Do they owe me benefits? Because this isn't a mistake of benefits payment case. It's not pledged. It's not alleged. It doesn't exist. This says simply that we had a duty to notify the office of central management services after notifying, before the payments were made, the attorney general and the retirement department, because there was a retirement component, that we had a separate duty to notify this agency that is not on the checks, that we had no reason to be aware it should be notified, and in my opinion, it doesn't have to be notified. How many departments do we have to notify when someone passes away? In addition to the notification of the death, and this is relevant, I believe, we notified the attorney general that we were disputing that she had been paid all of the benefits she was owed, and we asked them to continue making payments, and that's what they did. There's an exhibit that's in the file at the trial level which wasn't objected to, has not been refuted, is not opposed, which we lay out that we notified the attorney general that the lady had passed away, that she was owed benefits, and they should continue to pay them. No one had disputed that. So to suggest that the record does not show that is inaccurate and a misrepresentation. The cases are clear on this. They've only had cases of any type of restitution or ability to seek repayment since 1994. The statement by the attorney general that actions for restitution of an overpayment fall within the general jurisdiction of a circuit court is simply inaccurate, and it's directly indicated as being inaccurate by the Supreme Court's Illinois graphics, and I've cited that on page 10 of my brief where the Illinois Supreme Court says that the law does not hold that an employer can maintain a cause of action for recovery of all manner of compensation benefits. These decisions simply establish a cause of action for restitution where an employee receives a compensation of an amount as interest on an award and is later determined that the employee is unentitled to those amounts. The unentitled-to-amount determination was the cases it's talking about where the industrial commission set aside the award and determined that the employee was not entitled to that. Those are the limited circumstances under which a respondent or a party can apply to the circuit court to seek reimbursement benefits. So this broad statement that the circuit court had jurisdiction to hear any and all claims for reimbursement is inaccurate. What they're trying to do is have the courts create a legislative provision for the Work Compact that does not exist, an ability, a remedy, which does not exist. The legislature wants to give employers the right to seek repayment of benefits. Under these circumstances, it should and can and has the authority to enact legislation to do so. But the employer can't complain that I can't get my benefits under the Act, therefore I'm going to go to circuit court. If he can do that, then we can do that, and we should be able to go to circuit court and file lawsuits claiming we didn't receive all the benefits under the Work Compact. The statement by the counsel that the complaint does not allege that the notification was made until afterward is, again, inaccurate. I would ask the court to look at the complaint. The complaint in this case says we were notified and we continue to make payments. And the other point I would make is what is conceded by the Attorney General in this case is the notion that the circuit, at least is the notion that the circuit court cannot consider a workers' compensation claim matter, which involves a determination of an overpayment. If it has to make that determination, it lacks jurisdiction. It gives me that much. The counsel gives me that much. It tries to argue that this case falls within that exception because there is no requirement, it is not necessary for the circuit court to make a determination whether or not an overpayment has been made. And we dispute that. We don't have to dispute it because the Attorney General in his own language in his motion stated, quote, if this court determines that an overpayment exists, then the person who received the proceeds shall be liable. So what the Attorney General is saying is the question of overpayment is unresolved. That's what it said at the trial. Were these checks deposited or were they cashed? Were they deposited in the estate's account? They were deposited in the estate's account. Yes, they would have been deposited and paid to the children. Where were they deposited? I don't care where they were paid to. In the estate's account. They were deposited in the estate's account. I believe so. I'm speaking from memory. I'm not sure. Or were they cashed for cash? They were cashed for cash. I ran it through my escrow account, as I recall. But I don't recall whether I wrote the check. I think I wrote the checks to the children. That's what, yes. My memory is I wrote the checks. When these checks were tendered to the bank, they were placed in your escrow account? Or were they placed in the estate's account? I believe they were placed in my escrow account. And I believe I wrote it so I could write checks to the children, the two children. Because in my view, when a person dies and there's benefits that are owed, those benefits go to the children. That's what the statute says in my reading of it. So the administrator didn't deposit the checks then? The administrator endorsed the checks. The administrator signed Nancy Gibson's name on the back of the check? Yes, Your Honor. And gave it to you, and you deposited it in your own escrow account? I believe I did, yes. Okay. I mean, was it a separate escrow account just for the estate? No, it was my trust account that I, whenever I have client funds, I put it in a trust account to make distribution. If there's, to me, that's the appropriate way to do it. I'm not trying to disguise anything. I'm trying to give the children their money. No one else is getting it but them. The statute says that I've told the Attorney General that the lady has died and continue her benefits. He's continuing her benefits. I'm paying it to the children. I don't understand why there's any question that anything before it that suggested that anything before it. I'm not suggesting that. I'm just trying to figure out what procedure was followed in this case here. Right. The reason it wasn't shown in the inventories is because it's not an asset of the estate if it's payable to the children. And the suggestion by the counsel that all the pension benefits were paid is shown by the record. It's not just after it. It shows what was paid, not what was owed. In my position, it was more owed than was paid. And I made that clear with the Attorney General. The checks weren't made out to the children. They were made out to the deceased. Correct. They were owed to the children, made out to the deceased in order to – In your opinion. Right, in my opinion. And just as a tax refund – And so the administrator – why would she even – well, never mind. In other words, if – my view is analogous to a deceased taxpayer. If a husband dies and a check is made out to him and the administrator endorses it because the wife is under the will or whatever, for whatever reason, legally the wife gets the money, does he have to send it back to the IRS? No, he doesn't. It says you can endorse it and pay the person who legally is entitled to the money. That's the children. She could sign a deed to sell the house, the real estate? The administrator? Okay. Well, I mean, it would depend on the nature of the administration. The Probate Act says by order of court. You've got to get permission to do that. Yeah, there's nothing in the Probate Act that says – in my view – that says that we have to get permission in an unsupervised administration to endorse a check, which is by law payable directly to the only heirs of the estate. I didn't deem that as being something that was necessary to do. The reason there isn't any forgery under any circumstances is a forgery would be if Nancy Gibson complained to somebody or her estate complained to somebody, paid, signed her check without her authorization, she didn't get the money, she was entitled to it. The estate knew it was paying Nancy Gibson, and it paid Nancy Gibson, and the money went to her estate or went to her heirs. They can't complain to anybody, get anything to mislead them. They were notified. Nobody forged anything with respect to the state of Illinois. Nobody forged anything, period. The money was paid by the state of Illinois after being notified of the death of Nancy Gibson and being notified of our position that the money should continue to pay. They continue to pay the money. It's undisputed by the Attorney General who represented the employee. Somebody forged a Nancy Gibson signature. She was dead. She couldn't sign it. Someone signed Nancy Gibson. Forgery is an unauthorized – someone who signs without authority to sign. In my opinion, the person who signed had the authority to sign on behalf of the deceived. In my opinion, the administrator of the estate has the authority to act on behalf of the deceived. In my opinion, the authority can sign contracts on behalf of the deceived, and a check is a contract. In my opinion, the legal authority of the state of Illinois gave the administrator the authority to accept payment made payable to the deceived. In my opinion, the state of Illinois, the law of the state of Illinois gave the administrator authority to make sure that the payment made to the deceived went to the individuals who were entitled to succeed Nancy Gibson, who was deceased, to succeed her interest in that check. In my opinion, that is not forgery. In my opinion, when we notify the state of Illinois ahead of time of the circumstances, that is not a mistake. That is not misrepresentative, that is not misleading, that is not inaccurate, that is nothing but being up front. But I notify two separate departments to make sure they know about it, to make sure they don't have any complaint, to make sure that there's no question of anybody trying to pull anything. I notify the retirement department and the attorney general handling the estate because there's two components. That's not forgery, that's not misleading, that's not inaccurate, there's nothing as far as, there's nothing underhanded, there's nothing but above board about that scenario. And it just bothers me that it's being suggested that if there's anything done here that is, in my view, is not above board and appropriate. If the state of Illinois has complained, admits, we knew she had passed away, we knew she was deceased, but you had a duty to notify an additional department other than the person you notified. To me, that is, that is what is, in my view, misrepresentative. Why in the world would we have to notify a department that is not on a check, that we don't know is involved in this case, an administrative agency which handles, I don't know why. But that's what's alleged here. Not that the state of Illinois, the person, not that her employer didn't know that she was deceased, not that the retirement department didn't know, not that the person who wrote the check didn't know. The Department of Central Management Services said we should have notified them. You had a duty. It does not even list that we got the money. It just says we had a duty to notify them. Thank you. Thank you, counsel. A motion to vote? Let me just start where counsel ended. This is obviously not a unique situation where permanent payments are ordered by the commission. Somebody dies. Who's to be notified and how of the death to terminate the payments? The branch of the executive department that's responsible for administering those payments should be notified. And that is? Normally it would have been the Department of Human Services. In this case, due to a shuffling of the executive branch during the prior governor's administration, Department of Central Management Services took over the process as payor for administering. We don't dispute that if either of those entities had been notified of the death of the payee, that there would be an issue to be resolved about whether that notification was sufficient to avoid the mistake element for a restitution claim. That's not a jurisdictional issue. That's a merits issue, which I think really isn't properly before the court. But let me say this. Opposing counsel got up here and said he was troubled by misrepresentations that were made. That makes two of us. As an officer of the court, I have to say that I am flabbergasted. I have never seen such a shifting ground set of representations of law and fact that are unsupported by the record and that are groundless in an effort to try to avoid having to put back into the state's coffers money that it had no duty to pay and that they had no right to keep pursuant to this award. The representation was made here in Olin Court and in the defendant's brief that the Attorney General, the Assistant Attorney General representing the state employer in this case in front of the Workers' Compensation Commission, was notified of the claimant's death before any of these six checks were made. So you say that's a question of fact. That's false. That's not a question of fact. That's false. I am really upset that these representations are being made to the court. Now, it's outside the record. But I will tell you this, that I have been through records. And I have talked to that Attorney General. And I've seen the emails go back and forth. And for this attorney to represent that we can see that that notification was made before these checks were made out is not only outside the record. It is beyond the pale. It is unacceptable for an officer of the court to make that type of misrepresentation. It's not for this court to decide. Do you have any dates on those letters? There was no letter. I thought there was two notifications. No, he went to SERS to get retirement benefits, which they paid. And they're not an agent for CMS or DHS. They have nothing to do with workers' compensation benefits. What about P&G, the attorney general? There was an affidavit sent to the claimant that has to be filled out every year saying, I'm still entitled to this. It came back either unreturned or with a notation deceased on it, at which point a call was made by the CMS representative to verify this complaint. To Mr. Forbes. Let's move. I'm sorry. It's a jurisdictional issue. Advocacy and emotions aside, let's deal with the jurisdictional. The record doesn't admit that. And the basis for that in the record is simply a statement in Mr. Forbes' letter that says, after I spoke to the assistant AG, the benefits were terminated. Well, of course, that's true. Six months after the death and after six months of checks were made, the payments were terminated. But that's not before the checks were made. That's a flagrant distortion of those facts. Likewise, the claim here that the administrator signed those checks, there's no evidence of that in the record. And I don't think the court should take at face value that representation. In fact, there's information that the administrator had no knowledge of these checks whatsoever. That's an issue that we need to get to the bottom of. But let's go back to the jurisdictional issues in this case, which is the theory that it turns upon whether there's some duty. The merits of our claim don't turn upon whether there was a duty or not. That's an allegation of the complaint that's probably surplusage. The common law action for restitution doesn't depend upon it. There's an argument that in Illinois you can't get restitution of benefits, overpayment of workers' compensation benefits, unless those are benefits that are paid before the commission's decision becomes final. There's no support for that in the law. And even if it were, that would be an issue going to the merits of the claim in this case that could be asserted in front of the circuit court if it has jurisdiction, which it certainly does. The notion that they can file a counterclaim, that there were more payments owed on the award than were paid, absolutely. Let them file that in front of the circuit court. And I believe they said that's who should decide it. We'd be only too glad to have a factual determination as to whether there were any underpayment of temporary total disability payments pursuant to the award or any other payment due on the award. That's what the circuit court decided. But we didn't get the chance to have those issues resolved because the circuit court threw it out hearing that there was an issue of overpayment of workers' compensation benefits. Thank you, counsel. We appreciate your argument. I believe the court will take the matter under advisement and render its decision. The court will stand at recess until 9 a.m. tomorrow morning. Thank you. All rise.